IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRANDON JOHNSON and CHARI JOHNSON,<br><br>                Plaintiffs,<br><br>v.<br><br>THACKER ENTERPRISES, INC. dba ONE STOP AUTO SALES, FRED THACKER, O'REILLY CHEVROLET, INC., SAMUEL RUBEN GARCIA, MANHEIM REMARKETING, INC., and WELLS FARGO BANK, NATIONAL ASSOCIATION dba WELLS FARGO DEALER SERVICES,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 1:15-cv-152-DB<br><br>District Judge Dee Benson |

      Before the court is Defendant Manheim Remarketing, Inc.'s ("Manheim") Motion for Summary Judgment. (Dkt. No. 41.) In its Motion, Manheim seeks dismissal on three grounds: that Manheim was not a "transferor" within the meaning of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, *et seq.* (the "Odometer Act"); that Manheim did not know that the vehicle's odometer had been tampered with, nor did it have any intent to defraud; and that Plaintiffs' claims are barred by the Odometer Act's two-year statute of limitations. The Motion has been fully briefed by both parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

BACKGROUND

On November 28, 2011, Plaintiffs purchased a GMC Sierra 1500 pickup (the "GMC") from Defendant Thacker Enterprises, Inc. dba One Stop Auto Sales ("One Stop") and Fred Thacker ("Thacker"). (First Amended Complaint ("Compl.") at ¶ 43.) At the time of the sale, the mileage listed for the GMC was 85,103. (*Id.* at ¶ 50.) Prior to purchasing the vehicle, Plaintiffs requested a Carfax report but were assured by One Stop salesperson Tyson Savage that the vehicle was clean, without collisions, and had low miles. (*Id.* at ¶ 47.)

In December of 2013, Plaintiffs placed the GMC for sale. (*Id.* at ¶ 55.) At that time, Plaintiffs were informed by a potential buyer that the Carfax for the GMC showed that the odometer reading had been altered. (*Id.*) Plaintiffs subsequently discovered that Samuel Ruben Garcia ("Garcia") purchased the GMC from O'Reilly Chevrolet, Inc. ("O'Reilly") on approximately August 27, 2007. (*Id.* at ¶ 29.) At the time of purchase in 2007, the GMC's odometer showed 83,169 miles. (*Id.*) As of February 24, 2009, the mileage on the GMC showed 121,789 miles. (*Id.* at ¶ 31.) As of June 12, 2010, the mileage shown on the odometer of the GMC was reported as 65,448 miles. (*Id.* at ¶ 33.) Thus, sometime between February 2009 and June 2010, Garcia tampered with or caused the odometer on the GMC to be tampered with, reducing the mileage shown by at least 56,000 miles less than the actual miles on the GMC (*Id.* at ¶ 32; Declaration of Ronald Ady ("Ady Decl.")[1] at ¶¶ 11-12.) The mileage discrepancy was reported on Carfax as of January 1, 2011. (*Id.* at ¶ 34.)

Garcia owned the vehicle until he traded it back in to O'Reilly in March of 2011. (*Id.* at ¶ 35.) At the time of the 2011 trade-in, the odometer for the GMC showed as few or fewer miles

---

[1] The Ady Declaration was submitted in support of Plaintiffs' Rule 56(d) Motion to Deny or Defer on the Motion for Summary Judgment, pending discovery.

than it had shown when O'Reilly sold the vehicle to Garcia about three and a half years earlier. (*Id.* at ¶ 37.) Plaintiffs allege that Garcia informed O'Reilly that he had replaced the odometer and that the mileage was understated. (*Id.* at ¶ 36.) Plaintiffs alternatively allege that the odometer was non-functional at the time Garcia traded it in to O'Reilly. (*Id.* at ¶ 36.)

On March 9, 2011, O'Reilly sold the GMC to One Stop at a Manheim-hosted auction sale in Tucson, Arizona. (*Id.* at ¶ 39; Declaration of John Duplanty ("Duplanty Decl.") at ¶ 6.) At the auction, as with all Manheim auctions, Manheim acted as an auctioneer—a forum in which registered dealers could buy and sell motor vehicles to other registered dealers. (Duplanty Decl. at ¶ 3.) Manheim did not take ownership of, or title to, the GMC at any point during or after the auction. (*Id.*) After One Stop placed the winning bid on the GMC, Manheim generated an invoice for the purchase, listing the seller as O'Reilly and the purchaser as One Stop. (*Id.* at ¶ 7.) The invoice contains the following disclaimer:

> SELLER and PURCHASER agree that AUCTION is neither responsible for odometer mileage on the consigned vehicles nor for the information contained in the odometer mileage statement which SELLER as Transferor is required to complete and sign and PURCHASER as Transferee is required to acknowledge.
>
> SELLER and PURCHASER agree that all representations concerning the Vehicle are solely the responsibility of the SELLER. ***
>
> AUCTION is merely performing an auction service, and expressly disclaims all express and/or implied warranties as to merchantability, fitness or any other matter whatsoever other than the title guarantee set forth above.

(*Id.*) For its role in the transaction, Manheim received a seller's fee of $90 from O'Reilly and a purchaser's fee of $195 from One Stop. (*Id.* at ¶ 10.)

O'Reilly did not provide a certificate of title to One Stop at the time of sale. (*Id.* at ¶ 9.) When O'Reilly ultimately provided the title, possibly within hours of the sale, the front of the

3

title stated that the actual miles were 83,169, but the reassignment portion on the back of the title stated that the vehicle had 82,096 miles. (Ady Decl. at ¶ 34.) Plaintiffs believe that, as a result of this discrepancy, O'Reilly and One Stop proceeded to arbitration to resolve the issue. (*Id.*) Plaintiffs also believe that this arbitration process was conducted "through the Tucson auction by Defendant Manheim[.]" (*Id.* at 28.)

On April 14, 2011, a new title was issued for the GMC, with stated mileage of 83,169 miles. (*Id.* at ¶ 37, Ex. H.) Plaintiffs claim that a representative of Manheim, Teresa Loera, may have notarized the title and thus that the person who signed the title as a representative of O'Reilly may also have been a representative of Manheim, acting as an agent of O'Reilly. (*Id.* at ¶ 37.) Plaintiffs request denial or deferral of Manheim's Motion for Summary Judgment in order to engage in additional discovery to flesh out these suspicions. (*See id.*; Dkt. No. 54.)

DISCUSSION

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiffs allege a single cause of action against Manheim—Violation of the Federal Odometer Act. (Compl. at ¶¶ 71-83.) The Odometer Act provides in relevant part:

> (a)(1) Disclosure requirements.—Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
>
> > **(A)** Disclosure of the cumulative mileage registered on the odometer.
> >
> > **(B)** Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.
>
> **(2)** A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

49 U.S.C. § 32705. A "transferor" is defined as "any person who transfers ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor." 49 C.F.R. § 580.3.

Manheim first moves for summary judgment on the grounds that it did not act as a "transferor" within the meaning of the Odometer Act, because it never received or transferred ownership of the GMC. Plaintiffs argue that Manheim "acted as the agent of O'Reilly Chevrolet in having the title reissued so that the mileage discrepancy was removed from the title to the 2003 GMC." (Pl. Opp., Dkt. No. 55 at 4.) Plaintiffs argue that this possible agency is an "unresolved material issue of fact." (*Id.*)

The court agrees that an agent of a transferor may be held liable for knowingly signing a disclosure statement for a transferor. *See* 49 U.S.C. § 32705; 49 C.F.R. § 580.3. The court disagrees, however, that the facts before the court—even construed in the light most favorable to

Plaintiffs and drawing all reasonable inferences therefrom—would support a conclusion that Manheim acted as an agent of O'Reilly in signing a false odometer statement.

Manheim's role in this transaction is largely undisputed. Manheim acted as an auctioneer at the time of the sale in March 2011. (Duplanty Decl. at ¶ 3; Compl. at ¶ 39.) To the extent Manheim was involved in an arbitration between the parties, it acted as a neutral third party. (Ady Decl. at ¶¶ 25-29, 34.) Title did not formally pass to Manheim at any time during the sale or title transfer process; rather, the GMC was consigned to Manheim as auctioneer. (Duplanty Decl. at ¶ 3; Ady Decl. at ¶¶ 18-37, and Exhibits.) Courts have consistently held that a non-title-holding auction, as such, is not a transferor under the Odometer Act. *KNR, Inc. v. Copart, Inc.*, 2016 WL 1182727 (N.D. Ohio 2016); *Badu v.* Allen, 2015 WL 10458899 (E.D. N.Y. 2015) ("Courts considering an auto auction company's status as a vehicle's transferor have found that liability lies only where the defendant auction company actually has an ownership interest in the relevant vehicle."). This understanding is consistent with the language of the Act and regulations themselves. *See* 49 U.S.C. § 32705 ("A person transferring ownership of a motor vehicle…"); 49 C.F.R. § 580.3 ("any person who transfers ownership of a motor vehicle…"). Accordingly, there is no dispute that Manheim did not act directly as a transferor within the meaning of the Odometer Act.

Plaintiffs argue that a dispute arises with respect to whether Manheim acted as an agent of a transferor—O'Reilly—in signing a false odometer statement on its behalf. Plaintiffs assert by way of a Rule 56(d) affidavit that formal discovery would likely show that several new titles were issued for the GMC either while the vehicle was consigned to Manheim or during the pendency of the arbitration. (Ady Decl. at ¶¶ 28-40.) Plaintiffs assert a belief that discovery

6

regarding these title transactions would show that Manheim "facilitated" the transactions, including "sign[ing] a false odometer disclosure as agent for O'Reilly[.]" (*Id*. at ¶ 38iii.) To support this suspicion, Plaintiffs point to the April 14, 2011 Title, which Plaintiffs believe was notarized by an agent of Manheim, Teresa Loera. Plaintiffs state that because Ms. Loera may have notarized the title, the person who signed the back of the title—the allegedly false odometer statement—was probably also employed by Manheim, signing as an agent of O'Reilly. (*Id.* at ¶¶ 37-38.) Manheim has unequivocally denied any such connection, stating that "Manheim did not reach an understanding, agreement, or conspiracy with O'Reilly or any other party to misstate the mileage of the Vehicle." (Duplanty Decl. at ¶ 11.)

      The undisputed facts before the court suggest that Manheim acted only as a disinterested third party with respect to the sale of the GMC. The parties agree that Manheim was an auctioneer, not a purchaser, and an arbitrator, not a party to the arbitration. However, Plaintiffs ask the court to draw an inference that because Manheim acted as a notary on a title, it must also have acted as a signor. Such an inference would not be consistent with the evidence before the court.

      Plaintiffs further request that the court defer or deny summary judgment to allow additional discovery on this point. Under Rule 56(d) of the Federal Rules of Civil Procedure, a court may provide relief to the non-moving party in a summary judgment motion who shows by affidavit or declaration that "it cannot present facts essential to justify its opposition" to the motion. Fed.R.Civ.P. 56(d) (2012). "[T]he protection afforded by Rule 56(d) is designed to safeguard against a premature or improvident grant of summary judgment." *Wilcox v. Career Step, LLC*, 2012 WL 5997201, at *2 (D. Utah Nov. 30, 2012). On the other hand, seeking to

7

engage in a fishing expedition with the hope of discovering some evidence to save a case from summary judgment is "wasteful of the court's time and resources and is not the purpose of Rule 56(d)." *Barker v. Citigroup, Inc.,* 2012 U.S. Dist. LEXIS 56726 at *5 (D. Utah Apr. 20, 2012). In the Tenth Circuit, Rule 56(d) is appropriate only if a party provide an affidavit or declaration that sets forth: (1) "the probable facts not available," (2) why those facts cannot be presented currently, (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable [the party] to" obtain those facts and rebut the motion for summary judgment. *Valley Forge Ins. Co. v. Health Care Mgmt. Ptnrs., LTD,* 616 F.3d 1086, 1096 (10th Cir.2010).

Here, Plaintiffs have stated by way of the Ady Declaration what they believe to be "probable facts" that would defeat summary judgment—namely, some type of collusion or agency relationship between Manheim and O'Reilly with respect to the title transactions that allegedly occurred following the sale of the GMC at the Manheim auction. However, the court cannot make the logical leap suggested by Plaintiffs. The possibility that title transactions may have occurred during the pendency of the arbitration, or that an agent of Manheim may have notarized one of the titles, does not support the inference that Manheim acted as an agent of O'Reilly, the clear transferor, in any of those transactions.

Furthermore, this case was originally filed in late 2015. Although Plaintiffs aver that formal discovery has not taken place, they have provided no reason why they have propounded no discovery in the past year and a half, other than a general assertion that the parties were in settlement communications. (Ady Decl. at ¶¶ 3, 41.)

The court recognizes that Rule 56(d) motions should be "liberally treated" unless "dilatory or lacking in merit." *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522

(10th Cir. 1992). Both points are met here. Plaintiffs lack a basis to assume that additional facts will be discovered that would create a genuine issue of material fact, and the motion comes nearly a year and a half into litigation, with no explanation of why such a delay was necessary. As such, the court denies Plaintiffs' Motion for Rule 56(d) discovery.

Accordingly, there is no dispute of material fact that Manheim did not act as a "transferor"—or as agent of a transferor—within the meaning of the Odometer Act. The court, therefore, grants Manheim's Motion for Summary Judgment.[2]

## CONCLUSION

For the foregoing reasons, Manheim's Motion for Summary Judgment is GRANTED. Plaintiffs' Rule 56(d) Motion to Deny or Defer Decision is DENIED.

DATED this 25th day of July, 2017.

BY THE COURT:

Dee Benson
United States District Judge

---

[2] Because the court has determined that Manheim was not a "transferor" or agent of a transferor for purposes of the Odometer Act, the court declines to consider Manheim's other two stated bases for summary judgment.